UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HAYNES CONSTRUCTION COMPANY,

Plaintiff,

v.

BLUEPRINT PARTNERS CORP.
d/b/a BLUEPRINT ROBOTICS; and
ATLANTIC SPECIALTY INSURANCE COMPANY,

Defendants.

---

Civil Action No.:

**VERIFIED COMPLAINT**

Plaintiff, HAYNES CONSTRUCTION COMPANY ("Haynes" or "Plaintiff"), by and through its attorneys Hinckley, Allen & Snyder LLP, alleges for its Verified Complaint against Defendants, BLUEPRINT PARTNERS CORP. d/b/a BLUEPRINT ROBOTICS ("Blueprint") and ATLANTIC SPECIALTY INSURANCE COMPANY ("Atlantic") (collectively the "Defendants"), as follows:

**PRELIMINARY STATEMENT**

1.     This is an action by Plaintiff, as general contractor, against Blueprint, its subcontractor, arising out of a construction project for three midrise buildings located in Buffalo, New York for material breach and nonperformance of the parties' subcontract including but not limited to Blueprint's failure to perform certain work, labor, and services, breach of the implied covenant of good faith and fair dealing, and fraud.

2.     This action is also against Blueprint's surety, Atlantic, for material breach and nonperformance under a performance bond it executed and issued on the construction project, which guaranteed the performance of the obligations of its principal, Blueprint.

**THE PARTIES**

3.      Haynes is a foreign business corporation organized under the laws of the State of Connecticut, with a principal place of business located at 32 Progress Avenue, Seymour, Connecticut 06483.

4.      Upon information and belief, Blueprint is a foreign business corporation organized under the laws of the State of Maryland, with a principal place of business located at 1500 Broening Highway, Baltimore, Maryland 21224.

5.      Upon information and belief, Atlantic, is a business corporation incorporated under the laws of the State of New York, with a principal place of business located at 605 Highway, 169 North, Suite 800, Plymouth, Minnesota 55441.

6.      Upon information and belief, Atlantic is engaged in the business of insurance and is authorized and licensed by the Department of Insurance to conduct an insurance business as defined in the Insurance Laws of the State of New York.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated.

**FACTUAL ALLEGATIONS**

9. Haynes entered into a prime contract to perform certain construction work for a construction project on several midrise buildings located in Buffalo, New York, also known as the Commodore Perry Homes, 339 Perry Street, and 448 South Park (the "Project").

10. On or about February 23, 2024, Haynes and Blueprint entered a subcontract bearing contract number 2309-9001 whereby Blueprint would perform a portion of the work on the Project (the "Subcontract"). A true and accurate copy of the Subcontract is attached as **Exhibit A**.

11. Pursuant to the terms of the Subcontract, Blueprint was required to complete and perform certain work on the Project, including but not limited to "Rough Carpentry Work" (the "Work") in accordance with the contract documents, plans, specifications, and addendums. *See* Subcontract Exhibit A, B.

12. Blueprint was also required to provide sufficient manpower to complete the Work. *See* Subcontract §§ 6(a), (b).

13. On or about May 6, 2024, Atlantic as surety, executed and issued Performance Bond No. 800164572 (the "Performance Bond") for Haynes, as obligee, in connection with the Work on the Project. A true and accurate copy of the Performance Bond is attached as **Exhibit B**.

14. Haynes is a beneficiary under the Performance Bond.

15. The Performance Bond guaranteed, *inter alia*, Blueprint's prompt and faithful performance of its Work under the Subcontract and obligated Atlantic to perform in the event of Blueprint's default under the Subcontract.

16. Pursuant to the Performance Bond, Atlantic's obligations to perform are triggered when: (i) Blueprint is in default under the Subcontract; (ii) Blueprint has been declared by Haynes

to be in default under the Subcontract; and (iii) Haynes performed its obligations under the Subcontract.

17.    Upon the happening of each of these conditions, Atlantic has thirty (30) days to conduct an investigation of any claims submitted by Haynes running from the last of: (i) the receipt of written notice of the default; (ii) access to the Project site; or (iii) receipt of requested documentation.

18.    Each of the conditions triggering Atlantic's performance under the Performance Bond were met, and thus, Atlantic was obligated to timely notify Haynes that: (i) it retained independent contractor(s) to complete the Subcontract; or (ii) it elected to arrange for a separate subcontract between Haynes and a replacement subcontractor; or (iii) it is obligated to complete the Subcontract; or (iv) it elected to provide financial assistance to Blueprint to assist with completion of the Subcontract; or (v) deny liability and notify Haynes of its reason for denial; or (vi) conduct an investigation to determine the amount owed to Haynes and, as soon as practicable, after the amount is determined, make payment to Haynes.

19.    Despite frequent communications between Haynes, Blueprint, and Atlantic indicating Blueprint's nonperformance under the Subcontract, Atlantic failed to perform under the Performance Bond.

## COUNT ONE
**(Breach of Contract against Blueprint)**

20.    Haynes repeats and realleges each of the preceding paragraphs as if set forth at length herein.

21.    Haynes and Blueprint entered into the Subcontract for good and valuable consideration.

22.    Haynes fully and faithfully performed its obligations under the Subcontract.

23. Under the terms of the Subcontract, Blueprint was required to perform and complete its Work in strict accordance with the Subcontract.

24. Blueprint defaulted and material breached the Subcontract. Blueprint abandoned the Project and ceased its Work under the Subcontract.

25. By letter dated June 4, 2025 to Blueprint, Haynes identified several issues and defaults with Blueprint's performance on the Project, including *inter alia*, its lack of manpower and failure to obtain proper insurance.

26. By letter dated July 3, 2025, Haynes served Blueprint with a 48-hour notice to cure certain window defects.

27. By letter dated August 8, 2025, Haynes served Blueprint with written notice concerning certain framing defects and that Haynes had taken steps to supplement its Work.

28. By letter dated September 5, 2025, Haynes served Blueprint with written notice that it was continuing to remediate Blueprint's Work and document all costs associated therewith.

29. By letter dated October 16, 2025, Haynes served Blueprint with written notice, again indicating Blueprint's failures to perform certain Work, including *inter* alia, missing or uninstalled interior walls and missing insulation.

30. Blueprint failed to cure its defaults and failures to perform. In addition, Blueprint abandoned the Project and its obligations under the Subcontract.

31. By letter dated November 5, 2025, Haynes declared Blueprint in default under the Subcontract and demanded that Atlantic undertake and perform its duties and obligations under the Performance Bond.

32. After Blueprint's abandonment, Haynes continued to provide notice of Blueprint's defective work and performance failures.

33. By letter dated February 5, 2026, Haynes served Blueprint with written notice that it had arranged for the supplementation of its contract scope on the Project related to its continued delays on the Project.

34. By letter dated March 17, 2026, Haynes served Blueprint with written notice concerning Blueprint's faulty window installation and indicated that Haynes had engaged with framing manufactures to correct its faulty work and that Blueprint's supervision and oversight in the field was nonexistent.

35. By letter April 13, 2026, Haynes served Blueprint with written notice concerning Blueprint's mis-manufactured floor trusses and wall panels and indicated that remediation work needed to be completed.

36. Blueprint materially breached the subcontract by *inter alia*: (a) defaulting on the Subcontract; (b) failing to cure its defaults; (c) performing defective and deficient work; (d) delaying the Project schedule; (e) failing to provide adequate manpower; (f) failing to provide adequate materials; (g) failing to pay subcontractors and suppliers; and (h) abandoning the Project.

37. Blueprint's abandonment of the Project constituted a material breach of the Subcontract. *See e.g.* Subcontract § 2(k) ("[Blueprint] shall not stop working for any reason relating to the pendency of a claim or dispute. Such work stoppage shall constitute a material breach of the Subcontract.").

38. As a direct result of Blueprint's abandonment and performance failures, Haynes was left to address substantial deficiencies with Blueprint's Work, defective and incomplete work, insufficient coordination and supervision, lack of required inspections and field verifications, incomplete and defective fabrication and installation, unprotected materials, disruption to the

Project schedule, and the need to retain replacement subcontractors and suppliers to supplement Blueprint's Work.

39.    Blueprint materially breached the Subcontract, and, as a result, Haynes has suffered and will continue to suffer damages.

40.    Haynes is entitled to direct damages resulting from Blueprint's breach of the Subcontract in an amount to be proven at trial but believed to be in excess of $2,000,000.00, plus attorneys' fees, interest, costs and disbursements.

41.    All conditions precedent to Haynes' action against Blueprint have been satisfied.

**<u>COUNT TWO</u>**
**(Breach of Implied Covenant of Good Faith and Fair Dealing against Blueprint)**

42.    Haynes repeats and realleges each of the preceding paragraphs as if set forth at length herein.

43.    The duty of good faith and fair dealing is implied in every contract in the State of New York and requires the exercise of all discretionary contract rights in good faith.

44.    The Subcontract between Haynes and Blueprint is valid and enforceable.

45.    To date, Haynes has fully and faithfully performed its obligations under the Subcontract.

46.    Under the Subcontract, Blueprint has an obligation to adhere to an implied covenant of good faith and fair dealing.

47.    The implied covenant requires Blueprint to not take, or refrain from taking, any action that has the effect of destroying, injuring or frustrating the right of Haynes to receive the fruit of the Subcontract.

48.    Blueprint has breached the implied covenant of good faith and fair dealing by, *inter alia*, promising to perform in order to induce payment from Haynes when it knew in fact that it

did not have the resources to do so; willfully and intentionally delaying, obstructing, and/or failing to cooperate with Haynes' mitigation and supplementation efforts; refusing, failing, and/or neglecting to timely acknowledge, respond to, or address Haynes' requests for adequate Project support; refusing, failing and/or neglecting to provide necessary Project oversight in connection with supplemental work; refusing, failing, and/or neglecting to address Blueprint's financial commitment to complete the Project and reimburse Haynes for supplemental vendor costs; and engaging in certain other acts and omissions.

49.     As early as June 2025, and continuing through 2026, Haynes provided Blueprint with written notice and documentation detailing the onerous costs associated with Haynes' supplemental and mitigation efforts.

50.     Blueprint refused, failed, and/or otherwise neglected to timely acknowledge, respond to, cooperate with, or provide adequate support in connection with Haynes' mitigation efforts, supplementation efforts, requests for Project oversight, and requests concerning Blueprint's financial commitment to complete the Project.

51.     Blueprint exercised any discretion with bad faith and/or in an arbitrary, irrational, or unreasonable manner.

52.     Blueprint's actions and omissions were done with willful disregard of Haynes' rights under the Subcontract.

53.     As a result, Haynes incurred increased costs that it would not have had Blueprint acted in good faith.

54.     The Project was extended well beyond the initial Project schedule and into the winter months and as a result, Haynes incurred additional winter costs, including but not limited to, ground thaw units, insulated blankets, hot water and accelerant additives, temporary millings,

and application and removal of cold patch and striping work to obtain a Temporary Certificate of Authority as a result of plants closing for the winter.

55.     Haynes suffered damages due to Blueprint's obstructive bad faith conduct.

56.     The implied covenant to take, or refrain from taking, any of the actions taken or refrained from taking by Blueprint is not contrary to any express provision in the Subcontract.

57.     Blueprint's actions, although not expressly forbidden by an express provision of the Subcontract, deprived Haynes of the right to receive the benefits under the Subcontract.

58.     Based on the foregoing, Blueprint has breached the implied covenant of good faith and fair dealing and Haynes has suffered damages; therefore, Blueprint is liable to Haynes in an amount to be proven at trial but believed to be in excess of $2,000,000.00, plus attorneys' fees, interest, costs and disbursements.

## COUNT THREE
### (Breach of Performance Bond against Atlantic)

59.     Haynes repeats and realleges each of the preceding paragraphs as if set forth at length herein.

60.     Atlantic was aware of Blueprint's nonperformance and failures on the Project. Atlantic was copied on correspondence between Haynes and Blueprint discussing Blueprint's nonperformance.  Atlantic provided written acknowledgment that it was aware of Blueprint's defaults on the Project as early as June 4, 2025.

61.     By letter dated November 10, 2025, Atlantic acknowledged receipt of Haynes' default notice to Blueprint and instructed Haynes to provide additional documentation, including, *inter alia*, the Subcontract and all documents related thereto, the executed Performance Bond, fully executed change orders, and complete financial summary of items paid to date.

62.    Shortly thereafter, by letter dated November 20, 2025, Atlantic confirmed that it was aware of a potential claim under the Performance Bond and instructed Haynes not to make further payments to Blueprint without Atlantic's "express written consent."

63.    On or about December 9, 2025, representatives from Haynes and Atlantic held a meeting to discuss the Performance Bond claim.

64.    Over the course of the next several months, Haynes provided Atlantic with written consent of payment packages for the months of October, November, and December, and January along with its requested invoices, even though Haynes was not required by the Performance Bond to obtain consent from Atlantic prior to making payment to subcontractors and suppliers to correct and complete Blueprint's work.

65.    Throughout the month of December 2025, Haynes made several attempts to contact Atlantic regarding its outstanding consent of payments, and although Atlantic had approved some of the subcontractor payments, Atlantic continued to withhold consent concerning other material costs.

66.    Haynes continued to produce a myriad of documentation to support its claim under the Performance Bond, including information related to Project schedules, time impact analyses, daily reports, photographic evidence, invoices and cost records, formal and informal notices, and field observations and deficiency tracking.

67.    Notwithstanding this detailed documentation, Atlantic failed to take appropriate action under the Performance Bond, despite ample opportunities to do so and the requirement that it make its decision within thirty days.

68.    By letter dated February 16, 2026, Haynes again demanded that Atlantic immediately undertake and perform its duties and obligations under the Performance Bond.

69.     On or about February 17, 2026, representatives of both Haynes and Atlantic attended an on-site meeting at the Project to inspect Blueprint's defective and incomplete Work. Haynes stressed to Atlantic the importance of receiving timely payments under the Performance Bond to mitigate Project impacts.

70.     On March 3, 2026, Haynes again demanded that Atlantic complete its investigation of its claims and immediately undertake and perform its duties and obligations under the Performance Bond. Haynes also indicated that its actual and estimated costs arising from Blueprint's nonperformance exceeded $2 million.

71.     Shortly after sending this letter, Haynes received a reply letter from Atlantic on March 3, 2026, indicating that it would like to conduct further investigations of its claims under the Performance Bond and requested additional documentation, including copies of contracts associated with all completion costs, proof of payments for all completion costs, copies of project CPM schedules, and change orders associated with the prime contract. Atlantic even indicated receipt of Haynes documents for the months of November, December, January, and February.

72.     By letter dated March 13, 2026, Haynes again demanded that Atlantic complete its investigation of its claims and immediately undertake and perform its duties and obligations under the Performance Bond.

73.     Despite receiving numerous notices of Blueprint's default, access to the Project, and documentation supporting Haynes payment claims, Atlantic failed to perform its obligations under the Performance Bond.  Atlantic's inaction and delay prejudiced, harmed and damaged Haynes.

74.     By letter dated April 6, 2026, Atlantic acknowledged that it was at least partially responsible under the Performance Bond to pay Haynes for completion costs incurred due to

11

Blueprint's defaults.    However, Atlantic has yet to make any payment to Haynes despite acknowledging that it is obligated to make payment.

75.    By letter dated April 24, 2026, Haynes rejected Atlantic's position and renewed its demand for full payment of the costs incurred and to be incurred as a result of Blueprint's default in the amount of $2,013,677.22 — as plainly required under the Performance Bond.

76.    Notwithstanding repeated notice, documentation, demands, and access to the Project site, Atlantic failed and refused to timely and fully perform its obligations under the Performance Bond.

77.    Under the Performance Bond, Atlantic as surety issued the Performance Bond with Haynes as obligee in connection with Blueprint's work on the Project.

78.    The Performance Bond is valid and enforceable.

79.    The Performance Bond guaranteed the prompt and faithful performance of the Subcontract and obligated Atlantic to perform in the event of Blueprint's default.

80.    Blueprint materially breached and defaulted the Subcontract.

81.    Haynes fully and faithfully performed its obligations under the Subcontract and provided Atlantic with timely written notice of Blueprint's default and abandonment of the Project.

82.    Atlantic materially breached the Performance Bond and failed and refused to honor its obligations thereunder, and, as a result, Haynes has suffered and will continue to suffer damages.

83.    Haynes is entitled to direct damages resulting from Atlantic's breach of the Performance Bond in an amount to be proven at trial but believed to be in excess of $2,000,000.00, plus attorneys' fees, interest, costs and disbursements.

84.     All conditions precedent to Haynes' action against Atlantic and the Performance Bond have been satisfied.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Haynes Construction Company demands judgment as follows:

a) As to Count I, awarding judgment for Plaintiff Haynes and against Defendant Blueprint for the damages resulting from Defendant Blueprint's breach of contract in an amount to be proven at trial but believed to be in excess of $2,000,000.00;

b) As to Count II, awarding judgment for Plaintiff Haynes and against Defendant Blueprint for the damages resulting from Defendant Blueprint's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial but believed to be in excess of $2,000,000.00;

c) As to Count III, awarding judgment for Plaintiff Haynes and against Defendant Atlantic for the damages resulting from Defendant Atlantic's breach of the performance bond in an amount to be proven at trial but believed to be in excess of $2,000,000.00;

d) Granting interest, costs, disbursements, and attorneys' fees; and

e) Granting such other, further and different relief as the Court deems just and proper.

Dated:  July 6, 2026

_/s/ Nathan R. Sabourin_____
Nathan R. Sabourin (151475)
**HINCKLEY, ALLEN & SNYDER LLP**
30 South Pearl Street, Suite 1101
Albany, New York 12207
(518) 396-3148
nsabourin@hinckleyallen.com

*Attorneys for Plaintiff,*
*Haynes Construction Company*

13

**<u>VERIFICATION</u>**

STATE OF NEW YORK　　　)

　　　　　　　　　　　　) ss.:

COUNTY OF ALBANY　　　)

　　　Nathan R. Sabourin, an attorney duly admitted to practice law in the State of New York and the United States District Court for the Western District of New York, under penalties of perjury, affirms the following:

　　　That deponent is one of the attorneys for the Plaintiff in this action; that deponent has read the foregoing Complaint and knows the contents thereof; that the same is true to the deponent's own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters believes it to be true.

　　　The reason this Verification is not made by Plaintiff and is made by deponent is that Plaintiff is not presently located in the county where the deponent-attorney maintains an office.

　　　The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows: Review of records and conversation with client.

Dated: July 6, 2026

　　　　　　　　　　　　　　　　　*/s/ Nathan R. Sabourin*
　　　　　　　　　　　　　　　　　Nathan R. Sabourin

70776885 063149/0217430

14